STATE OF NORTH CAROLINA

COUNTY OF FORSYTH

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14-CVS-1956 2014 APR 17 P 12: 24

FORSYTH COUNTY C.S.

BY

|  |  |
|---|---|
| ERIN DICKINSON, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNIVERSITY OF NORTH CAROLINA, UNIVERSITY OF NORTH CAROLINA SCHOOL OF THE ARTS; and FRANCO COLAVECCHIA, JOSEPH TILFORD, HOWARD JONES, and VICKI DAVIS, each of them individually and officially, | ) |
| Defendants. | ) |

**AMENDED COMPLAINT**

NOW COMES Plaintiff, pursuant to Rule 15(a) and (c), prior to any responsive pleading, and amends her Complaint as a matter of course to allege the following against Defendants.

## PARTIES

1.      Plaintiff is a citizen and resident of Pennsylvania. She is also a qualified individual with a disability under 42 U.S.C. § 12131(2).

2.      Defendant University of North Carolina ("UNC") is a body corporate capable of being sued under N.C.G.S. §116-1 for the actions of its constituent institutions. UNC is based in Orange County, North Carolina. It is a "public entity" under 42 U.S.C. § 12131(1) and, on information and belief, is a program or activity that receives federal funding as defined at 29 U.S.C. §794(b)(2)(A).

1



3.     Defendant University of North Carolina School of the Arts ("UNCSA") is a constituent institution of the University of North Carolina under N.C.G.S. §116-4 which is a body corporate capable of being sued under N.C.G.S. §116-1. UNCSA is based in Forsyth County. It is a "public entity" under 42 U.S.C. § 12131(1) and, on information and belief, is a program or activity that receives federal funding as defined at 29 U.S.C. §794(b)(2)(A).

4.     Defendant Franco Colavecchia, on information and belief, is a citizen and resident of Rhode Island and was a teacher at UNCSA and resident of Forsyth County when teaching there.     He is currently an emeritus member of the faculty according to the UNCSA website.

5.     Defendant Joseph Tilford, on information and belief, is a citizen and resident of Forsyth County and was Dean of the School of Design and Production at UNCSA at the times described in this Complaint.

6.     Defendant Howard Jones, on information and belief, is a citizen and resident of Forsyth County and was Director of the Scenic Art Program at UNCSA at the times described in this Complaint.

7.     Defendant Vicki Davis, on information and belief, is a citizen and resident of New York and was a faculty member at UNCSA at the times described in this Complaint.

8.     Colavecchia, Tilford, Jones and Davis are each sued in their official capacities under Title II of the Americans with Disabilities Act as well as in their individual and official capacities under North Carolina common law.

## JURISDICTION

9.     Plaintiff brings this action pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 and §12203, to the Rehabilitation Act, 29 U.S.C. § 794 and §704(a), and under North Carolina common law.  The Superior Court has jurisdiction pursuant to N.C.G.S. §

Case 1:14-cv-00412-TDS-JEP   Document 9   Filed 05/22/14   Page 2 of 26

§ 7A-240, *et seq.* and under these applicable federal statutes and the case law. The Plaintiff seeks damages in excess of $10,000 and injunctive relief.

## FACTS

10.  Plaintiff worked for nearly six years as a corporate accountant after college before deciding to pursue her passion for theater art. She enrolled in Southern Oregon University's undergraduate Theater Art program, with a concentration in set design. She graduated magna cum laude in May 2008.

11.  Plaintiff applied and was accepted into the graduate program in Scenic Art in the School of Design and Production at UNCSA in the fall of 2008.

12.  The Master's Degree program, one of only two graduate programs in Scenic Art in the country, takes three years to complete. The school operates on trimesters -- with fall, winter and spring terms.

13.  In the first year, the students in the Scenic Art program had to take a course called Set Design I in each of the three terms.

14.  Under UNCSA guidelines for graduate students, each student must maintain an overall average of at least 3.0 each term as well as cumulatively.

15.  If a student fails to maintain an average of 3.0, he or she can be placed on academic probation.

16.  Plaintiff suffers from severe migraine headaches and a disorder known as Polycystic Ovary Syndrome or PCOS, both of which are periodically completely disabling. When symptomatic, the illnesses substantially limit major functions -- including sleeping, eating, walking, standing, communicating and interacting with others, concentrating, and doing manual tasks.

3

17.     PCOS can cause formation of multiple cysts on the ovaries. At times, the cysts that form cause her debilitating pain that can last for weeks.

18.     Plaintiff has been diagnosed with PCOS since she was a teenager and has had periodic, disabling episodes of the syndrome, as well as debilitating migraine headaches, while at UNCSA.

19.     Defendant Colavecchia, a nationally renowned set design teacher, was a larger than life figure at the UNCSA who taught courses in set design, but was nearing the end of his active career when Plaintiff enrolled.

20.     Colavecchia became very ill in the fall trimester of 2008, had to be hospitalized and then missed most of the winter term as well.

21.     A new teacher, Defendant Davis, taught his classes in his place.

22.     Based on Plaintiff's observations, Davis and Colavecchia were close personally. On information and belief, UNCSA had hired Davis at Colavecchia's urging, with the plan that she would replace him when he retired.

23.     Davis' teaching methods were not well received.

24.     That fall of 2008, Davis would arrive to class late and then hold the class over, interfering with students' ability to get to other classes. She did not follow the syllabus and presented written materials with errors in them.

25.     She also used ridicule as a teaching method, belittling students in class over their work and their questions.

26.     Plaintiff and another student were so concerned that they approached their advisor, Defendant Jones, and Plaintiff then arranged a meeting with Defendant Tilford, the Dean, in late November.

4

27.     Plaintiff and the other student were encouraged to put their concerns in writing and they did so.

28.     On information and belief, Jones and Tilford presented the concerns to Davis and she retaliated against Plaintiff, giving her a B- for the fall trimester, her only grade below B on a GPA of 3.45.

29.     Students in the graduate program must maintain a term and cumulative GPA of 3.0 or face academic probation.

30.     Davis' methods improved some in the winter term. She started and ended class more timely and generally followed the course syllabus.

31.     But her ridicule of students continued, including mocking Plaintiff over one of her medical conditions.

32.     Davis held class in a studio with fluorescent lighting. Plaintiff would wear sunglasses in that class to avoid migraine headaches, which could be triggered by harsh light.

33.     Each student at UNCSA has a studio space. Plaintiff asked Davis if she could do the classwork in her own studio where the lighting was different. Colvecchia had allowed students to work in that manner when he was the teacher.

34.     When Plaintiff explained to Davis that she wore sunglasses in class because the fluorescent lighting presented a risk of migraines, Davis openly mocked and ridiculed Plaintiff in front of the other students.

35.     Plaintiff went to disability services coordinator for UNCSA and reported Davis' conduct. She also complained again to Defendants Jones and Tilford.

36.     Plaintiff was asked to submit another written assessment of Davis' teaching methods. She did so, commenting that Davis had improved on being on time for class and on

5

following a course syllabus, but gave specific examples of Davis' negative attitude and ridicule towards her and other students and commented that Davis compared unfavorably to all the other instructors that Plaintiff had experienced at the school.

37.    Davis gave her another B-, her only grade below B on a GPA of 3.413 that term.

38.    Colavecchia returned to teaching in the spring 2009 term and Davis' role in his classes was greatly reduced that term.

39.    Plaintiff took two courses from Colavecchia in the spring term – a studio skills class and a scenic art class.

40.    Plaintiff completed the work and Colavecchia informed her that she had earned a B in both classes.

41.    Colavecchia also told Plaintiff that she could receive an A in each class if she did more work on her pieces, and wrote comments on the completed work.

42.    Plaintiff chose to accept the grade of B in each class.

43.    Plaintiff's G.P.A. for that term exceeded 3.0 with no grade less than B.

44.    Under the practice of the school, and as set out in the School of Design and Production handbook, at the end of each term the faculty as a group discusses each individual student's strengths, weaknesses, needs and progress. That information is then shared with the student via his/her advisor.

45.    Further, at the end of each spring term, every student is required to present her/his work to the entire faculty in what is called Portfolio Review. The faculty uses this Portfolio Review to further develop an understanding of each student's progress and steer the student's future in the program.

6

46.     Continuation in the program from year to year is not automatic.  Students must be invited to return the next academic year after the Portfolio Review.

47.     Plaintiff received very positive feedback after her first year Portfolio Review and UNCSA extended her a written offer to continue in the program for the second year.

48.     She accepted the offer, made the tuition deposit and secured financial aid for that next school year.

49.     Plaintiff did even better academically the first two trimesters of her second year.

50.     In the fall term, her G.P.A. was 3.688, with no grade below B.

51.     Plaintiff broke her toe in the winter term and could not, as a result, complete the work in her Welding/Metal Working class.

52.     She discussed the matter with that instructor and requested a grade of "Incomplete" as provided under the UNCSA guideline.

53.     Under those guidelines, with the agreement of the teacher, the student can arrange to complete the course work for one term before the end of the term immediately following.

54.     Plaintiff recovered from her broken toe and completed the work for the Welding/Metal Work claims in the immediately following spring term, as well as completed her other course work for that spring term.

55.     Plaintiff received a completed grade of B for the Welding/Metal Work course for the winter trimester.

56.     With that completed grade, her G.P.A. for the winter term was 3.625, with no grade below a B.

7

57. Plaintiff had additional health problems during the spring trimester, which she discussed with her advisor, Jones, and her grades declined some as a result. Her GPA for the spring term was 3.063, but she still had no grade below a B.

58. Plaintiff's cumulative G.P.A. at the end of her second semester was well above 3.0.

59. After Plaintiff completed her second year at UNCSA in the spring of 2010, the entire faculty again conducted a Portfolio Review, gave her positive feedback about her progress and recommended that UNCSA offer her a place in the school for her third year.

60. Plaintiff then received and accepted an offer from UNCSA to continue in the third and final year of the program, paid the deposit for the third year, and secured financial aid.

61. Like all constituent UNC institutions, UNCSA goes through an annual reappointment process with its tenure-track faculty.

62. On information and belief, in 2009-10 school year, UNCSA administrators decided not to reappoint Vicki Davis on the tenure track and, by policy, offered her a terminal appointment for the 2010-11 school year.

63. On information and belief, Davis and Colavecchia learned that one basis for the non-reappointment was student complaints about her teaching, including Plaintiff's written critique of Davis for ridiculing her over her health issues.

64. On information and belief, Colavecchia decided to retaliate against Plaintiff for her role in Davis losing her job by getting Plaintiff expelled from UNCSA.

65. In the summer of 2010, after Plaintiff had accepted the third year offer and paid her deposit, a UNCSA staff member from Dean Tilford's office contacted Plaintiff and, to

8

Plaintiffs' complete shock and surprise, informed Plaintiff that was dismissed from UNCSA because she had receiving two grades of "F" from Dr. Colavecchia in the spring 2009 trimester.

66.    Tilford's staff member explained that Colavecchia had just informed the administration that he had given Plaintiff an Incomplete in each of the two classes Plaintiff took with him in the spring 2009 trimester and that she had not completed the work.

67.    The staffer explained that since the second school year was over, her opportunity to make up the Incompletes had expired and the grades had converted to "F". Nothing could be done about the grades and Plaintiff had to be expelled.

68.    Plaintiff was stunned at this news, and the completely false and illogical claim that she had an Incomplete grade in Colavecchia's two classes in the spring term of 2009.

69.    She had never requested an Incomplete in either course, as UNCSA regulations required a student to do.

70.    And she would have been required to complete the course work by the end of the immediately following term, the fall of 2009.

71.    As noted, the faculty meet as a group at the end of each term and review each student's Plaintiff's progress, and any concerns are conveyed to the student through the advisor.

72.    If she had two grades of F at the end of the fall term for not the completing work, or even if she still had Incomplete grades from the prior school year, the faculty would have seen the grades and her advisor would have communicated with her about the problem.

73.    Plaintiff's advisor, Jones, had never said a word to Plaintiff during the entire 2009-10 school year about any incomplete work from Colavecchia's spring 2009 classes.

74.    No one else at UNCSA informed Plaintiff that she had incomplete grades in those courses until this announcement by Tilford's assistant.

9

75.     UNCSA did not provide graduate students with paper report cards, so Plaintiff could not provide a report card from the prior year showing she had received a B in these classes.

76.     She knew Colavecchia kept a handwritten grade book, however, so Plaintiff asked Tilford's staffer to obtain Colavecchia's grade book from spring 2009 term year.

77.     When asked for his grade book, Colvecchia told Tilford's staffer to ask Davis to retrieve the grade book from his office. The staffer asked Davis to do so.

78.     Davis purportedly went to retrieve the grade book and then informed the staffer that Colavecchia's grade book from 2008-09 was missing; that she found all of Colavecchia's grade books except for 2008-09.

79.     Colavechia met with Plaintiff and Tilford's assistant to discuss the situation.

80.     Plaintiff reminded Colavecchia that he had given her a B in both classes and had suggested that she could perform additional work if she wanted to get an A.

81.     Colavecchia responded to Plaintiff's comments by asking for a grade change form and, without explanation, signed the form in the meeting and changed Plaintiff's spring 2009 grade in one of the two classes -- Studio Art -- from an F to a B.

82.     But Colavecchia refused to change Plaintiff's grade of F in the Set Design class, claiming that he had never seen her work for that class.

83.     Plaintiff replied that he not only had seen the work, but that he had written suggestions on the pieces as to what she could do to get a grade of A.

84.     Colavecchia refused to change the grade.

85.     Exasperated, Plaintiff met with Defendant Jones and Defendant Tilford to appeal her dismissal from UNCSA. Both were long-time colleagues of Colavecchia,

10

86. Jones and Tilford realized the logical absurdity of Colavecchia's position regarding the Incomplete, but conspired to help Colavecchia accomplish his goal of getting Plaintiff expelled in retaliation for Davis losing her job.

87. Tilford and Jones deliberately put Plaintiff off for the whole summer, against UNCSA policy. They refused to meet because Colavecchia was in Rhode Island for the summer.

88. Plaintiff took photographs of work from the 2009 Set Design I course that she could locate in order to send them to Colavecchia in Rhode Island to prove she had done the work in that course, but Tilford and Jones refused to discuss the matter.

89. Jones told Plaintiff to wait and not to push the issue of her expulsion.

90. Tilford finally wrote to Plaintiff in mid-August and directed her to submit a written appeal and he would meet with her between September 7 and 14, 2010 to discuss it.

91. The fall term began on September 16, 2010. If Tilford denied her appeal in the days before the term began, Plaintiff would not have time to appeal his decision to the Chief Academic officer before the term started and risked losing financial aid and having to wait to reenter UNCSA another year.

92. Tilford then had surgery and Plaintiff was told he would be out of work until after the term started.

93. Plaintiff sought legal counsel, who wrote to the Chief Academic Officer on August 31, 2010, to ask his intervention, recounting the facts about the expulsion including the "disappearance" of the grade book.

11

94. The Chief Academic Officer, David Nelson, declined to intervene until the Dean decided Plaintiff's appeal, but persuaded Tilford to come to the school to meet with Plaintiff before the term began.

95. Tilford and Jones realized they had violated UNCSA policy in ignoring her months-long efforts to appeal her expulsion, and realized that Colavecchia's claim that she had not completed her work would not hold up to scrutiny, so they devised a plan B.

96. Tilford met with Plaintiff and told her she could remain in school only if she signed a probationary agreement that put her in a different position than all other graduate students. She did not just have to maintain a B average each term and cumulatively, but had to make at least a B in every course or be expelled.

97. She also she had to retake one term of Set Design I to make up the course credits that Colavecchia had claimed falsely that she failed.

98. Classes began in several days. Plaintiff could not obtain financial aid for the term unless she accepted the agreement and was enrolled.

99. If she refused to sign the agreement and appealed her dismissal to the Chief Academic Officer, any decision would come after the term had started, perhaps too late for her to enroll and complete course that term.

100. She also doubted that UNCSA administrators would overturn Tilford's decision to expel her and she would then have to seek legal recourse to continue in the program.

101. She also had not received a grade under B in any class in her first two years except the grades she received from Davis; so Plaintiff believed she could meet the probationary terms.

102. Plaintiff signed the agreement and enrolled in classes for the fall term.

12

103. Plaintiff asked to the take the Set Design I term that fall term to satisfy that condition of the agreement.

104. Tilford refused, telling Plaintiff she had to wait until the spring term to retake that course.

105. Tilford knew that Davis would teach Set Design in the spring term, setting a lair for Plaintiff.

106. On November 22, 2010, plaintiff developed debilitating PCOS symptoms and had to be treated at North Carolina Baptist Hospital and doctors took her out of school until December 7, 2010.

107. The disabling nature of the pain severely impacted Plaintiff's ability to function in daily life, including being able to attend class, do any physical activity and function normally.

108. Plaintiff kept her instructors, including Jones, informed of her medical condition at all times and used the UNCSA student health service as part of her medical treatment.

109. There was a record at UNCSA of her disabling condition and the specific problems that fall term.

110. When she returned to class, Jones told Plaintiff that she was not sufficiently engaged in the program – referring specifically to her medical issues as an academic problem.

111. She provided a note on December 10 from the UNCSA nurse practitioner with whom she was following up, indicating that Plaintiff should be able to function normally at the start of the next term.

112. In response that same date, Defendant Jones wrote Plaintiff a letter disparaging her and referring dismissively to her request for "reasonable accommodation" three times. Jones copied the letter to Defendant Tilford.

13

113.    Jones gave Plaintiff until December 23 to finish the work for his painting class for that term.

114.    Plaintiff stayed at school after other students had left for the holiday break to complete the painting and waited on campus for Jones to review it, but he never met with her as he had arranged.

115.    Instead, Jones wrote Plaintiff a second letter in early January, castigating her and requiring changes to the painting.

116.    Though he requested changes in the work of every student in the class except one, the letter was written as if Plaintiff were the only student who had to do additional work. He again copied Tilford.

117.    Plaintiff received an A in her other two classes that Fall term.

118.    On or about January 18, 2011, Plaintiff again had to be treated at a hospital for pain from PCOS and missed time from school again as a result.

119.    Plaintiff again kept her instructors informed of her medical issues.

120.    On or about February 24, 2011, Mary Ann Zotto, the instructor in an Acrylics painting class Plaintiff was taking, informed Plaintiff that she had missed too much of the class for medical reasons, "through no fault of your own," and had to complete missed class sessions to pass the course.

121.    Zotto was sympathetic to Plaintiff's condition, stated that she was sure something could be worked out and recommended that Plaintiff see a specific endocrinologist in Winston-Salem whom Zotto thought could help Plaintiff with her PCOS issues.

122.    On or about February 28, 2011, Plaintiff became ill again from PCOS and another student drove her to Baptist Hospital from a set construction class called "Crew".

14

123.   Defendant Jones taught the class and Plaintiff informed him she had to go to the hospital.

124.   That evening, Jones wrote Plaintiff a third letter that acknowledged she had become ill but ripped into her for leaving class (to go to the hospital) and for acting "sullen" (because she was sick) and for not showing leadership in the class.  He copied that letter to Tilford.

125.   In response to this third letter, Plaintiff contacted the disability services office at the school and expressed concern that her disabling condition was being used against her.

126.   On March 3, 2011, Plaintiff met with the Acrylics instructor, Zotto, to discuss some way to make up for the time missed.

127.   Zotto again assured her it could be worked out and offered to go talk with Tilford to discuss options.

128.   After meeting with Tilford, Zotto's attitude toward Plaintiff took a 180 degree turn.

129.   On information and belief, Tilford told Zotto that Plaintiff should have been expelled in the summer of 2010, had failed to complete work in 2009 for Colavecchia and that Plaintiff was only still UNCSA due to the probationary agreement.

130.   Tilford violated Plaintiff's right to confidentiality under federal law known by the acronym FERPA in disclosing the existence of the probation agreement without her consent.

131.   On information and belief, Tilford told Zotto falsely that the agreement prohibited Plaintiff from receiving an incomplete grade and completing the work in the next term.

132.   The probationary agreement had no such language.

15

133.  After meeting with Tilford, Zotto wrote to Plaintiff that she could no longer consider the option that Zotto had proposed -- Plaintiff receive an Incomplete and finish the course work in the spring term while attending Zotto's watercolor painting class.

134.  Zotto wrote that such a plan would violate the terms of Plaintiff's probation.

135.  Plaintiff was surprised and dismayed at this communication, as her probationary agreement was a confidential student record and Tilford had disclosed it to Zotto without Plaintiff's permission.

136.  And Tilford and Zotto were wrong – the agreement did not prohibit Plaintiff from taking an incomplete for medical reasons and completing the work the next term.

137.  The process of assigning an incomplete grade due to medical problems was expressly recognized in UNCSA policy as a legitimate method for addressing personal difficulties during a given term such as the disabling medical issues Plaintiff had experienced.

138.  Plaintiff asked the disability services coordinator to meet with her and Defendant Tilford the week of March 7.

139.  At the meeting, Plaintiff asked Tilford if she could receive incomplete grades for the term under the probation agreement due to her medical issues and complete the work before graduation in June.

140.  Tilford acknowledged that Plaintiff could remain in good academic standing with an Incomplete under the probation agreement, but refused her request to receive Incomplete grades from the winter term and declared she would be expelled under the probation agreement.

141.  Plaintiff appealed to Nelson, the Chief Academic Officer, in writing on March 11.

142.  Nelson took two weeks to consider her request, then declared that he did not yet have jurisdiction and that Plaintiff first had to appeal to Tilford.

16

143. Tilford stood by his decision to refuse her request for accommodation, and issued a dismissal letter on March 28, 2011, based on the fact that she had missed class time for medical reasons and received grades of C- from Zotto and C+ from Jones in the winter term.

144. That letter was written one week into the final spring term of her three-year program.

145. Plaintiff was told she had to appeal that expulsion decision to Tilford again and that he would have 30 days to decide her appeal before she could appeal beyond him.

146. She filed that appeal on April 4, 2011, and asked to be reinstated so she could keep up on her work pending the outcome of the appeal.

147. Tilford refused her request for reinstatement pending the appeal, so Plaintiff filed a lawsuit in Forsyth County Superior Court and obtained a temporary restraining order reinstating her at UNCSA and allowing her to complete the work from the winter term that had formed the basis of her dismissal.

148. During the 10 days of the TRO, defendants developed a "Plan B" for expelling Plaintiff notwithstanding the court's involvement, and UNCSA formally agreed to allow Plaintiff to finish the spring term without further involvement from the court.

149. First, Jones and Zotto agreed not to give Plaintiff a grade of B or higher in the work the court had ordered that she be allowed to complete from the winter term.

150. They intentionally gave her grades of B- and C+ respectively for the work she made up, knowing she would be expelled under the probation agreement.

151. And Jones also gave Plaintiff a C- for the fall term painting class.

17

152.    Second, Jones assigned Plaintiff to work on the production crew to prevent her from having time to work on her incomplete work from the winter term or to work on her thesis project.

153.    Third-year students are ordinarily relieved of all production duties in the spring term so they can work on their thesis project.

154.    Jones intentionally denied Plaintiff that opportunity and gave her production responsibilities that he had never before required of a third year student.

155.    As a result of being assigned production duties, Plaintiff had to stay up all night several times to complete her other course work for that term as well as her incomplete work from the winter term.

156.    Jones knew of the impact the schedule had on Plaintiff and hoped she would quit school in the face of these time demands. She did not.

157.    Third, Jones intentionally gave Plaintiff a B- for the spring term in his class.

158.    Fourth, Jones and Tilford had assigned Vicki Davis, working in her terminal appointment year, to teach the Scene Design I class that spring term.

159.    Plaintiff had asked to take the class in the fall when another professor was teaching it, but Jones and Tilford had refused, knowing that Davis would teach it in the spring term.

160.    On information and belief, Davis knew all about Plaintiff's probationary agreement through Jones and/or Tilford.

161.    Davis exacted her revenge, and gave Plaintiff a B- in Set Design.

18

162. On May 25, 2011, Jones wrote Plaintiff a letter, copied to Tilford, dismissing Plaintiff from the UNCSA program at the end of the spring term based on her grades and the terms of the probation agreement.

163. Plaintiff was not allowed to graduate after borrowing more than $100,000 to pay tuition and fees and living expenses.

## FIRST CAUSE OF ACTION
### DISABILTY DISCRIMINATION – 42 U.S.C. § 12132

164. All prior paragraphs are incorporated by reference.

165. Plaintiff is a qualified person with a disability under Title II the Americans with Disabilities Act. She had medical conditions that periodically disabled her and prevented her from engaging in meaningful activity.

166. The Plaintiff has a record of her conditions on file at UNCSA.

167. Plaintiff's instructors knew of the disorder and discussed her requests for accommodations.

168. Defendant Jones explicitly rebuked and mocked Plaintiff, both verbally and in writing, for requesting accommodations due to missing time because of her disabling PCOS symptoms, and worked directly with Tilford to deny those requests, even when ordered to do so by a state court.

169. Plaintiff requested additional time to complete the work for the fall term of 2010 and again for the winter term as a reasonable accommodation. Defendant's Tilford and Jones refused to consider the request for the winter term, in violation of the ADA.

19

170. Tilford then discriminated against Plaintiff by revealing the probationary agreement to Zotto when Zotto came to discuss an accommodation of Plaintiff for the time she missed in the winter term due to her illness.

171. Even when ordered by a court to allow Plaintiff the opportunity to complete her work from the winter term, Tilford and Jones, in their official capacity as agents of UNCSA, conspired among themselves and with the teacher Zotto to award grades of less than B to achieve Plaintiff's expulsion from UNCSA – intentionally subverting the accommodation ordered by a court.

172. Defendant Jones also assigned Plaintiff production duties that he had never assigned any other third year student in an effort to push Plaintiff beyond her physical limits and force her to quit. She then received grades less than B in some of her spring term courses, in part because of the time demands Jones deliberately placed upon her unlike any other student.

173. Such disparate treatment compared to other students was discrimination based on Plaintiff's disabling condition.

174. Defendants Tilford and Jones and all persons they conspired with acted with deliberate indifference to Plaintiff's disabling condition and the rights she had under the ADA.

175. Plaintiff seeks and is entitled to an injunction ordering Plaintiff appropriate equitable relief from this discrimination.

176. Plaintiff also seeks and entitled to compensatory damages and attorney's fees under Title II of the ADA.

## SECOND CLAIM FOR RELIEF
## DISABILITY DISCRIMINATION – 29 U.S.C. § 794

177. All prior paragraphs are incorporated by reference.

20

178. The discriminatory treatment described herein, resulting in Plaintiff's expulsion from UNCSA at the end of her final term, also violated 29 U.S.C. § 794, also known as the Rehabilitation Act.

179. On information and belief, UNC and UNCSA receive federal funds and thus are public entities subject to the requirements of the Rehabilitation Act.

180. The same actions complained of as discrimination in violation of Title II of the ADA are incorporated here by reference and also constitute discrimination under 29 U.S.C. § 794.

181. Plaintiff seeks and is entitled to an injunction ordering Plaintiff appropriate equitable relief from this discrimination.

182. Plaintiff also seeks and is entitled to compensatory damages and attorney's fees under the Rehabilitation Act and the statutory remedial provisions it references.

### THIRD CAUSE OF ACTION
### RETALIATION – 42 U.S.C. § 12203

183. All prior paragraphs are incorporated by reference.

184. The actions of Defendants Colavecchia, Davis, Tilford and Jones complained of herein constituted retaliation against Plaintiff for raising issues that a reasonable person would see as protected under Title II of the ADA, and did so in violation of 42 U.S.C. § 12203.

185. Davis and Colavecchia retaliated against Plaintiff for complaining that Davis had mocked and ridiculed her in front of classmates when she explained her request for an accommodation due to her migraine headaches, by conspiring to achieve her expulsion from UNCSA, an act finally accomplished in May 2011.

21

186.    The claim that Plaintiff had not completed work in the Set Design I class was false, supported by the hiding or destruction of the grade book and leading to Plaintiff's expulsion – at Colavecchia's insistence – in May 2011.

187.    That intentionally duplicitous contact formed the basis for the probationary agreement fashioned by Tilford and Jones that required Plaintiff to meet academic standards beyond what was expected of any other UNCSA graduate student – an agreement that was retaliatory and discriminatory and was used expressly to expel her in May 2011.

188.    Jones and Tilford then retaliated against Plaintiff for requesting accommodations in the fall and winter terms, with Jones mocking her requests in writing and giving her intentionally lower grades for seeking accommodations.

189.    Tilford then retaliated against Plaintiff for requesting accommodations by attempting to expel her in March and April 2011, only to be ordered to reinstate her by a court.

190.    Tilford and Jones then retaliated against Plaintiff for obtaining that court order of reinstatement by conspiring to assign grades less than B that would secure her dismissal from UNCSA under the retaliatory probation agreement.

191.    Jones further retaliated by assigning crew or production work to Plaintiff in an attempt to break her physically and emotionally.

192.    Jones, Tilford and Davis also retaliated against Plaintiff by assigning Davis to teach the Set Design class in the spring term with the agreement that Davis would assign Plaintiff a grade of less than B and secure her expulsion.

193.    Even if there was no express agreement to achieve that result, Davis knew of the probation agreement and retaliated on her own volition to assure that Plaintiff was expelled.

22

194.     All defendants acted intentionally in retaliating against Plaintiff, or at least with deliberate indifference to the retaliatory impact of their actions.

195.     Plaintiff seeks and is entitled to an injunction ordering Plaintiff appropriate equitable relief from this discrimination.

196.     Plaintiff also seeks and entitled to compensatory damages and attorney's fees under Title II of the ADA.

## FOURTH CAUSE OF ACTION
## RETALIATION – 29 U.S.C. § 794

197.     All prior paragraphs are incorporated by reference.

198.     The retaliatory actions described herein resulted in Plaintiff's expulsion from UNCSA at the end of her final term and also violated 29 U.S.C. § 794.

199.     On information and belief, UNC and UNCSA receive federal funds and thus are public entities subject to the requirements of the Rehabilitation Act.

200.     The same actions complained of as retaliation in violation of 42 U.S.C. § 12203 are incorporated here by reference and also constitute retaliation under 29 U.S.C. § 794.

201.     Plaintiff seeks and is entitled to an injunction ordering Plaintiff appropriate equitable relief from this discrimination.

202.     Plaintiff also seeks and entitled to compensatory damages and attorney's fees under the Rehabilitation Act and the statutory remedial provisions it references.

## FIFTH CAUSE OF ACTION
## TORTIOUS INTERFENCE WITH CONTRACT

203.     All prior paragraphs are incorporated by reference.

204.     Plaintiff had at contract with UNC and UNCSA to obtain her graduate degree.

23

205. Defendants Colavecchia, Tilford, Jones and Davis knew of and interfered with Plaintiff's contract with UNCSA to obtain her master's degree.

206. They each acted with legal malice and without legal justification in inducing UNCSA to breach the contract.

207. Colavecchia acted beyond the scope of his authority in falsely claiming that Plaintiff had not completed the work in his classes, and then hiding or destroying his grade book in conjunction with Davis in retribution for Plaintiffs' critique of Davis as a teacher. His actions resulted in the eventual expulsion of Plaintiff at his request.

208. Tilford acted outside his authority in not following UNCSA appeals policy and refusing to meet with Plaintiff over her dismissal, and then finally meeting with her too close to the fall term of 2009 for her remain in school while she appealed her dismissal; forcing her to sign an unconscionable probationary agreement to achieve Colavecchia's demand that Plaintiff be expelled. He also acted unlawfully because his actions violated the ADA and the Rehabilitation Act in the ways described herein.

209. Jones acted unlawfully in using Plaintiff's health problems against her, openly ridiculing her to Tilford for raising them and working with Tilford to refuse her requests for accommodation. He acted unlawfully and beyond the scope of his authority because his actions violated the ADA and the Rehabilitation Act in the ways described herein.

210. Jones and Tilford then acted beyond their authority in persuading Zotto not to accommodate Plaintiff in the Winter term acrylics class and then using the grade in that class as the basis to dismiss her from the program again.

211. Jones and Tilford then acted unlawfully in circumventing the court order reinstating her by relying on the probationary agreement and ensuring that plaintiff received grades below B and was expelled for a third time in May 2011.

212. Davis then acted unlawfully by intentionally assigning Plaintiff a grade of B- knowing that it would result in Plaintiff's expulsion – and retaliating against Plaintiff for her part in Davis not obtaining tenure at UNCSA.

## **PRAYER FOR RELIEF**

Plaintiff prays that the Court award her the following relief:

a.   An appropriate injunction to clear her academic record and award her a Master's Degree or set equitable terms for her to meet to receive the degree.

b.   Compensatory damages;

c.   Punitive damages against Colavechia, Jones, Tilford and Davis;

d.   The cost of this action, including reasonable attorneys' fees under the ADA and,

e.   Any other relief that the Court deems just and necessary.

Respectfully submitted, this is the 16th day of April, 2014.

S. Luke Largess

S. LUKE LARGESS
N.C. Bar Number 17486
Tin Fulton Walker & Owen, PLLC
301 East Park Ave.
Charlotte, North Carolina 28203
(704) 338-1220
llargess@tinfulton.com

Case 1:14-cv-00412-TDS-JEP   Document 9   Filed 05/22/14   Page 25 of 26

<u>CERTIFICATE OF SERVICE</u>

I certify that I have served the foregoing Plaintiff's Amended Complaint on each of the parties to this action, or when represented, on opposing counsel by:

_____ Hand delivering a copy hereof to the attorney for each said party addressed as follows:

_____ Depositing a copy hereof in a first-class, postage-prepaid, properly-addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service, addressed to the attorney for each said party as follows:

_____ Depositing a copy hereof with a nationally recognized overnight courier service, for overnight delivery, addressed to the attorney for each said party as follows:

_____ Telecopying a copy hereof to the attorney for each said party as follows:

_____ Emailing a copy hereof to the attorney for each said party as follows:

| | | |
|---|---|---|
| Howard Jones<br>2521 Stockton Street<br>Winston-Salem, NC 27127 | Joseph Tilford<br>3724 Squirewood Drive<br>Clemmons, NC 27012 | Franco Colavecchia<br>236 Westminster Street<br>Providence, RI 02903-1902 |
| University of North Carolina<br>c/o Thomas W. Ross, President<br>P.O. Box 2688<br>Chapel Hill, NC 27514 | University of North Carolina School of the Arts<br>c/o James Moeser, Interim Chancellor<br>1533 South Main Street<br>Winston-Salem, NC 27127 | |

Vicki Davis
2296 Franklin Depot Road
Sidney Center, NY 13839-1144

Respectfully submitted, this the 16th day of April, 2014.

*S. Luke Largess*

S. LUKE LARGESS
N.C. Bar Number 17486
Tin Fulton Walker & Owen, PLLC
301 East Park Ave.
Charlotte, North Carolina 28203
(704) 338-1220
llargess@tinfulton.com

26